**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Citadel Group Limited, a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 1394 |
| | ) | |
| Washington Regional Medical Center, | ) | |
| an Arkansas non-profit corporation | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge

Plaintiff Citadel Group Limited ("Citadel") brings this breach of contract action against

Defendant Washington Regional Medical Center ("WRMC"). Before us is Defendant's motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and

Rule 12(b)(3) for improper venue. Alternatively, Defendant moves to transfer the case to the

Western District of Arkansas. For the reasons set forth below, we grant Defendant's motion to

dismiss for lack of personal jurisdiction and deny its remaining motions as moot.

**BACKGROUND**

Plaintiff Citadel is a Delaware corporation with its principal place of business in Chicago,

Illinois. (Compl. at ¶ 1.) Defendant WRMC is an Arkansas non-profit corporation that operates a

regional medical center with offices only in Arkansas. (Affidavit of Tami E. Hutchinson at ¶ 4.)

Non-party Washington Regional Medical Foundation ("WRMF"), an Arkansas non-profit

1

corporation which acts as a supporting organization for WRMC, owns land in Springdale, Arkansas on which WRMC sought to develop a medical office building ("MOB"). (*Id.* at ¶ 5.)

In May 2005, WRMC mailed from Arkansas "Requests for Proposals" relating to construction of the proposed MOB. (*Id.* at ¶ 6.) WRMC sent these requests to developers in Arkansas and other states, including Citadel, in Illinois. (*Id.*) WRMC sought a "ground lease" arrangement, whereby the developer would lease land from WRMF and erect an MOB on it, which WRMC would in turn lease from the developer. (*Id.* at ¶ 8.) Shortly thereafter, Citadel sent WRMC a development proposal, and the parties commenced negotiations over the summer. (*Id.* at ¶ 11.) The parties' correspondence was conducted electronically, by mail, and through in-person discussions in Arkansas. (*Id. See also* Affidavit of David Varwig at 1-5; Affidavit of Alvin Kruse at 1-2.)

In September 2005, Citadel faxed WRMC a one-paragraph "Authorization to Proceed," which an officer of WRMC received and signed in Arkansas, thereby forming a contractual relationship between the parties. (Compl. at ¶¶ 6-7; Affidavit of Tami E. Hutchinson at ¶ 14.) That document authorized Citadel to "proceed with Project development at a fee of four percent (4%) of project costs," and provided that "[WRMC] is responsible for all legal expenses and other costs associated with Project development, except architectural and engineering fees, whether or not the Project is ultimately developed." (Compl. Ex. F. at p.2.) In accordance with the Authorization, WRMC delivered a $40,000 good faith deposit to Citadel in Chicago. (Compl. at ¶ 7.) Citadel does not dispute that no employee or officer of WRMC ever visited Illinois in connection with the Authorization, nor for any other reason related to the development of the MOB. (Affidavit of Tami E. Hutchinson at ¶ 14.)

In the following months, Citadel prepared to complete the transaction, incurring expenses through its retention of attorneys, accountants, and banks in Illinois. (Compl. at ¶ 9.) During this period, WRMC was in frequent contact with Citadel and the Illinois attorneys and banks that Citadel had retained. (*Id.*) In May 2006, however, WRMC informed Citadel that it did not intend to complete the transaction. (*Id.* at ¶ 10.) Pursuant to the Authorization, Citadel has made demands for payment of various costs, which WRMC has refused to pay. (*Id.* at ¶ 13.)

### STANDARD OF REVIEW

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing a prima facie case of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). *See also RAR, Inc. v. Turner Diesel, Ltd.*, 101 F.3d 1272, 1276 (7th Cir. 1997). In determining whether we have personal jurisdiction over the defendant, we may receive and consider affidavits and other materials submitted by the parties. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superceded by statute on other grounds as stated in FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990). For purposes of a motion to dismiss based on personal jurisdiction, we "accept all allegations of the complaint as true except those controverted by defendants' affidavits." *Northwestern Corp. v. Gabriel Mfg. Co.*, No. 96 C 2004, 1996 WL 73622, at *2 (N.D. Ill. Feb. 6, 1996). Where the defendant submits an affidavit contesting personal jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the existence of jurisdiction." *Purdue*, 338 F.3d at 783. We resolve all factual disputes in the record in plaintiff's favor, but we may accept as true those facts presented in defendant's affidavit that remain uncontested. *Id.*; *RAR*, 107 F.3d at 1275.

**DISCUSSION**

A federal court can acquire personal jurisdiction over a non-resident defendant by asserting either general or specific jurisdiction. General jurisdiction is proper only where a defendant has regular, continuous, and systematic contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Here, there is no dispute that WRMC lacks Illinois contacts sufficient for us to exercise general jurisdiction over it. However, in the absence of general jurisdiction, a court can acquire specific jurisdiction over a non-resident defendant when the claim arises from or is related to the defendant's contacts with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

To establish a *prima facie* case for specific personal jurisdiction, a plaintiff must show: 1) that the defendant is amenable to process; and 2) that the assertion of jurisdiction does not violate due process requirements. *See, e.g.*, *Watchworks, Inc. v. Total Time, Inc.*, 2002 WL 424631 (N.D. Ill. 2002). Under Federal Rule of Civil Procedure 4(k), a defendant is amenable to service when authorized by statute or when the defendant is subject to the forum state's long arm statute. Here, there is no statute providing for national service of process, so we look to the Illinois law to determine whether WRMC is amenable to process. *LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 734 (N.D. Ill. 1999). Because Illinois authorizes personal jurisdiction to the maximum extent allowed by the Illinois and federal constitutions, this inquiry collapses into a due process inquiry. 735 ILCS 5/2-209(c). *See also Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833-34 (N.D. Ill. 2000); *see also*. That inquiry requires us to "decide whether a defendant has 'purposefully established minimum contacts within the forum State' and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the

4

circumstances." *RAR*, 107 F.3d at 1277.

Though a contractual relationship can sometimes establish sufficient contacts with the forum state, "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR*, 107 F.3d at 1277 (citing *Burger King*, 471 U.S. at 478). "Rather, prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King*, 471 U.S. at 479) (internal quotations omitted). In making that determination, we consider: 1) who initiated the transaction; 2) where the contract was entered into; (3) where the performance of the contract was to take place; and 4) where the contract was negotiated. *See BAB Systems, Inc. v. UNK, Inc.*, No. 02 C 8797, 2002 WL 31867705, at * 2 (N.D. Ill. Dec. 20, 2002) (not reported in F. Supp. 2d) (citing *Viktron Ltd. Partnership v. Program Data, Inc.*, 759 N.E. 2d 186, 193-94 (Ill. App. 2d Dist. 2001)). Here, it is undisputed that no agent or employee of WRMC ever left Arkansas during the negotiations or ultimate signing of the Authorization. Indeed, Citadel actually sent employees to Arkansas to discuss WRMC's plans in-person. (Affidavit of Tami E. Hutchinson at ¶ 11.) However, the parties disagree as to which entity is properly considered to have "initiated" their transaction, and whether Citadel's performance occurred in Illinois.

The parties' relationship commenced after WRMC sent – and Citadel responded to – a two page "Request for Proposal" outlining the basic contours of WRMC's plans for the MOB. (Compl. at ¶ 6. *See also* Compl. Ex. A.) WRMC had sent these "generic" requests to numerous developers in Arkansas, Illinois, and other states. (Compl. at ¶ 6.) In arguing that its "Requests for Proposal" did not initiate the transaction, WRMC points to a number of cases distinguishing between the

5

proper "initiation" of a transaction and mere offers to do business or solicit bids.[1] These cases share

in common the finding that one party initiated a transaction by *responding to* an opposing party's

generic, blanket solicitation.

On the other hand, none of the cases is directly on point, and all are notably dated.

Ultimately, "pinning down which party initiated the transaction is merely one helpful factor in the

jurisdictional equation," and we do not find it particularly helpful, here. *Logan Productions, Inc.*

*v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996). *See also Lakeview Technology, Inc. v. Vision*

*Solutions, Inc.*, No. 05 C 7209, 2007 WL 79246 (N.D. Ill. Jan. 9, 2007) ("[T]he record suggests that

[Plaintiff] took the more substantial role in "initiating" the parties' relationship, though we

acknowledge that [Defendant] did make the first communication specific to the parties.

Accordingly, we do not place great weight on this factor.") (not reported in F. Supp. 2d).

Second, as to the location of Citadel's performance, WRMC's arguments center around its

assertion that "the Authorization contemplated only a single transaction that involved the

construction of one building in Arkansas for an Arkansas non-profit corporation." (Pl. Mot. to

Dismiss at 8.) WRMC stresses that Citadel's work in Illinois – and most notably its hiring of third-

parties, some of which are apparently Illinois entities that performed work in Illinois – is irrelevant

to our analysis because it constitutes nothing more Citadel's "unilateral acts" in the forum state.

---

[1]*See, e.g.*, *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 304 N.E.2d 27 (Ill.
App. 1973) ("[P]laintiff initiated the contact between the parties by sending to defendant a
'flyer' regarding available job applicants. However, the mailing of the 'flyer' represented only
an offer to do business, and defendant was under no obligation to respond. It was defendant,
then, who initiated the business transaction in question by telephoning plaintiff and requesting
that plaintiff divulge the name of a possible prospective employee whose partial identification
had been gleaned from the 'flyer.' "); *Smith Wilson Co., Inc. v. Metro Airlines, Inc.*, No. 87 C
5503, 1987 WL 26114 at *4 (N.D. Ill. Nov. 30, 1987) ("We believe the initial solicitation of bids
by Defendants does not constitute the initiation of business to subject Defendants to suit in the
bidder's state.").

Citadel counters that its actions were sufficiently connected to Illinois to establish minimum contacts, and that WRMC was not only aware of the fact that it was using Illinois-based third-party services, but that WRMC actually communicated with some of these entities directly.

Though Citadel's affidavits evidence numerous actions that it took in Illinois, they do not conflict with Plaintiff's basic account of events. In short, it is clear from the record that Citadel was essentially performing administrative services in Illinois, which were ultimately aimed at developing plans for the construction of a building in Arkansas. *Id.* at 783 n.14 (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). Further, Citadel's use of third-party Illinois entities is incidental given the primary nature of its services: administering the construction of a building in Arkansas. Thus, we conclude that the very nature of Citadel's Illinois-based services, taken with the fact that the contemplated project aimed solely at building a MOB in Arkansas for an Arkansas corporation, render Citadel's Illinois performance too insubstantial to establish minimum contacts. *Cf. Sungard Data Systems, Inc. v. Central Parking Corp.*, 214 F. Supp. 2d 879, 883 (N.D. Ill. 2002) ("The business that [Defendant] contracted to protect was not in Illinois, and the administrative services that [Plaintiff] may have provided from Illinois are too insignificant to establish minimum contacts.").

In sum, we find that the above factors counsel against exercising jurisdiction over WRMC. But, more importantly, those factors are merely tools for determining whether the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant," *RAR*, 107 F.3d at 1277 (quoting *Burger King*, 471 U.S. at 479) (internal quotations omitted). Ultimately, we find that the contract at issue here was simply

too cursory to embody the requisite contacts.

In cases such as this one, the Supreme Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' " *Burger King*, 471 U.S. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-17 (1943). From the evidence submitted, it is clear that the parties maintained a brief relationship directed at exploring and ultimately developing a much more substantial relationship in the future. That never happened. Indeed, the only agreement at issue here, the Authorization, explicitly contemplated that the project might not ever be developed. (Compl. Ex. F at 2.) Before the parties entered into a more lasting relationship, WRMC became concerned about expenses – specifically because it was concerned that its board might not even want to move forward with Citadel – and so it decided not to close the transaction. (Affidavit of David Varwig at ¶ 8.) Taken as a whole, the contract here plainly reflects an explicitly "preliminary" relationship – between an Arkansas corporation that seriously considered using an Illinois company to administer the construction of a building in Arkansas – that never came to fruition.

## CONCLUSION

For the reasons set forth above, we grant Defendant Washington Regional Medical Center's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendant's additional motions are denied as moot. It is so ordered.

Dated: 6/18/07

                                                 Honorable Marvin E. Aspen
                                                 U.S. District Court Judge