UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITADEL GROUP LIMITED, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) No. 07-CV-1394 |
| v. | ) ) Judge Marvin E. Aspen |
| WASHINGTON REGIONAL MEDICAL CENTER, an Arkansas non-profit corporation, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Plaintiff Citadel Group Limited ("Citadel") filed a complaint in the Circuit Court of Cook County, Illinois against Defendant Washington Regional Medical Center ("WRMC") to recover costs it expended pursuant to its contractual agreement breached by WRMC. (Compl. ¶¶ 6-11.) WRMC removed the case to this court under 28 U.S.C. §§ 1332, 1441, and 1446. (Not. of Removal at 1.) WRMC now moves to dismiss this case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391(a). (Mot. at 1.) In the alternative, WRMC moves to transfer the case to the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a). (Mot. at 1-2.) For the reasons set forth below, we deny the motion.

### Background

In May 2005, WRMC, an Arkansas corporation with its principal place of business in Arkansas (Compl. ¶ 2) issued Request for Proposals ("RFP"), which sought proposals to develop and lease a medical office building in West Springdale, Arkansas.

(Compl. ¶ 4.) Citadel, a Delaware corporation with its principal place of business in Chicago, Illinois, responded to the RFP and submitted its development proposal on May 13, 2005. (*Id.*) At the request of WRMC, sent to Citadel in Chicago, Citadel provided additional information to WRMC regarding its proposal. (*Id.* ¶ 7.) On August 24, 2005, Citadel sent WRMC in Arkansas a proposal letter for a transaction in which Citadel would acquire a ground lease estate from WRMC, finance and construct a new medical office building on the land, and then lease this building back to WRMC. (*Id.* ¶ 6.) The proposal letter contained a one-paragraph clause entitled Authorization to Proceed ("Authorization"), which would allow Citadel to conduct "Project development" under the terms specified by the agreement. (*Id.* ¶ 8, Ex. E; Mot., Ex. 1, Hutchison Aff. ¶¶ 12-22.) On September 15, 2005, WRMC's CEO, William Bradley, approved, signed, and returned the signed copy of the proposal letter, containing the Authorization, to Citadel in Chicago. (Compl. ¶ 7, Ex. F; Mot., Ex. 1, Hutchinson Aff. ¶ 13.) In addition, WRMC sent Citadel a significant good faith deposit. (Compl. ¶ 7; Resp., Ex. A ¶ 5.)

In accordance with the Authorization, Citadel prepared for the completion of the transaction by retaining attorneys, accountants, banks, and other professionals. (Compl. ¶ 9.) WRMC was aware of Project development efforts undertaken by Citadel, as it participated in regular conference calls with Citadel and the attorneys and banks hired by Citadel in Illinois. (*Id.*) Citadel continued Project development until May 2006, when WRMC informed Citadel that it would not complete the transaction. (*Id.* ¶ 10.) The Authorization requires WRMC to reimburse Citadel for all "legal expenses and other costs associated with Project development, except architectural and engineering fees, whether or not the Project is ultimately developed." (*Id.* ¶ 8.) Accordingly, Citadel filed

suit against WRMC to recover the costs it incurred from Project development, a total of $587,841.94, which it argues was within the terms of the Authorization. (*Id.* ¶ 11.)

## Analysis

**I.      12(b)(3) Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(3) for improper venue, we take all allegations in the complaint as true unless contradicted by affidavit, and we may examine facts outside the complaint. *Interleave Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003). The plaintiff bears the burden of establishing that venue is proper. *See, e.g.*, *Emjayco v. Morgan Stanley & Co.*, 901 F. Supp. 1397, 1400 (C.D. Ill. 1995). In addition, we must resolve any factual conflicts in the parties' submissions in favor of the plaintiff and draw any reasonable inferences from those facts in the plaintiff's favor. *See, e.g.*, *Nagel v. ADM Investor Srvs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). Moreover, we must take all the allegations in the plaintiff's complaint as true unless they are contradicted by affidavit. *Interleave Aviation*, 262 F. Supp. 2d at 913.

Federal law dictates the requirements for proper venue. *See* 28 U.S.C. § 1391(a). For cases, like this, in which diversity serves the basis of jurisdiction, § 1391(a) provides three forums in which venue is proper:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(a). WRMC does not reside in Chicago to establish proper venue under § 1391(a)(1). Citadel does not contest this point, and claims instead that venue is proper in this Court pursuant to § 1391(a)(2).

Under § 1391(a)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(a)(2). "A 'substantial part' of the events can occur in more than one place . . . . The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998). "Congress included the 'substantial' language in section 1391(a)(2) 'to preserve the element of fairness so that a defendant is not haled into some remote district having no real relationship to the dispute.'" *Mercantile Capital Partners v. Agenzia Sports, Inc.* No. 04 C 5571, 2005 WL 351926, at *5 (N.D. Ill. Feb. 10, 2005) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Moreover, "[w]hen determining whether the substantial portion requirement is met, [we] examine the location of the events giving rise to the claims alleged by the plaintiff and the nature of the dispute." *Id.* (internal quotations omitted).

WRMC argues that venue is improper in the Northern District of Illinois because "all substantial parts of the events relevant to the Authorization signed by WRMC and creating WRMC's relationship with Citadel took place in Arkansas." (Mem. at 5.) WRMC's statement, however, oversimplifies the parties' relationship. Clearly, events occurred in both places: WRMC sent an RFP to Chicago and in response, Citadel submitted a proposal; both parties communicated further to address remaining issues with

the proposal. (Compl. ¶¶ 4-5; Mem., Ex. 1, Hutchinson Aff. ¶¶9-11.) During this time, WRMC contacted Citadel in Chicago, and Citadel responded to WRMC in Arkansas. WRMC signed the Authorization and returned it to Citadel in Chicago, accompanied by a substantial good faith deposit. (Compl. ¶¶ 6-7; Mem., Ex. 1, Hutchinson Aff. ¶¶ 12-13.) This Authorization gave some authority to Citadel to begin Project development in preparation for the completion of the underlying transaction – financing, building, and leasing to WRMC a medical facility. (Compl. ¶ 9; Mem. at 3.) Although we will not determine the scope of the Authorization at this stage, Citadel argues that it acted pursuant to that Authorization, and with WRMC's knowledge, when it hired attorneys, banks, accountants, and other necessary professionals located in Illinois. (Compl. ¶ 9.)

Where the underlying events are essentially communications made by two parties located in separate districts, "[t]he requirements of § 1391(a)(2) 'may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.'" *Interleave Aviation*, 262 F. Supp. 2d at 913 (quoting *Fogelson v. Iatrides*, No. 99 C 6892, 2000 WL 631293, at *3 (N.D. Ill. May 12, 2000)). While WRMC correctly claims that the contract entered into by the parties was for the construction of a medical office building in Arkansas, that is not the only "substantial event" for the purposes of § 1391(a)(2). Jurisdiction is proper in this venue because "a substantial part of the events giving rise to the claim occurred" here. *See* § 1391(a)(2). Namely, WRMC submitted communications to Citadel in Chicago, signed an Authorization which permitted Citadel to begin Project development, and participated in conference calls and other

communications with the third-parties hired by Citadel allegedly pursuant to the Authorization.

Accordingly, WRMC's motion to dismiss is denied.

## II. Motion to Transfer Venue

In the alternative to dismissal, WRMC asks us to transfer this case to the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a). According to § 1404(a), a court may, for the convenience of parties and witnesses or in the interests of justice, transfer any civil matter to another district where venue is proper. Courts employ a three part test in determining whether to transfer a case under § 1404(a). *See, e.g.*, *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986); *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007). Thus, a court may transfer such a case if the moving party shows that: 1) venue is proper in the district where the action was originally filed; 2) venue and jurisdiction would be proper in the transferee district; and 3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. *Coffey*, 796 F.2d at 219 n.3; *Morton Grove Pharms.*, 525 F. Supp. 2d at 1044; *Sanders v. Franklin*, 25 F. Supp. 2d 855, 857 (N.D. Ill. 1998). The weight afforded to each of these factors is left to the discretion of the court. *Coffey*, 796 F. 2d at 219 ("The weighing of factors for and against the transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."). The moving party – here the defendant, WRMC – must demonstrate "that the transferee forum is clearly more convenient." *Id.* at 219-20.

First, as previously discussed, venue is proper in this district, satisfying the initial requirement of § 1404(a). Furthermore, venue would be proper in the transferee district,

the Western District of Arkansas, since it is a district in which the defendant resides. *See* 28 U.S.C. § 1391(a)(1). Thus, we now turn our attention to the remaining issues: whether the Western District of Arkansas is more convenient for the parties and witnesses and whether transfer to that district would serve the interest of justice. *Id.* § 1404(a).

## A. Convenience of the Parties and Witnesses

When evaluating the convenience of the parties and witnesses, the court considers the following private interests: "1) the plaintiff's choice of forum; 2) the situs of material events; 3) the relative ease of access to sources of proof; 4) the convenience of the parties; and 5) the convenience of the witness." *Morton Grove Pharms,*, 525 F. Supp. 2d at 1044.

### 1. Plaintiff's Choice of Forum and Situs of Material Events

The plaintiff's choice of forum is generally given great deference, particularly when the plaintiff resides in the district, unless material facts occurred elsewhere. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995) ("[A] plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor."); *Dunn v. Soo Line R.R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994); *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993). Because this district is Citadel's home forum, this factor weighs heavily against WRMC's request to transfer venue.

The situs of material events, as discussed at length above, occurred both in this district and in the Western District of Arkansas. However, as we have already determined that a substantial part of the events giving rise to this claim occurred here

such that venue is proper in this district under 1391(a)(2), we find that any additional events that may have occurred in the Western District of Arkansas do not outweigh plaintiff's choice of forum. *See Morton Grove Pharms.*, 525 F. Supp. 2d at 1045. Therefore, Citadel's choice of forum is still entitled to substantial weight.

**2. Access to Sources of Proof**

The third factor in determining whether transfer of venue should be granted is the relative ease of access to sources of proof. *Id.* This factor does not weigh heavily in one direction or another. Although the parties spend little time discussing this factor, it is likely that written discovery materials and other sources of proof are located equally in both districts.[1] Moreover, documentary evidence is easily transmittable, and has already been transmitted between parties to some extent in this case. (Mem. at 6.) Therefore, this factor does not shift the balance towards transfer.

**3. Convenience of the Witnesses**

In deciding whether one venue is more convenient to witnesses than another, we "should not limit [our] investigation to a review of which party can produce the longer witness list." *Vandeveld*, 877 F. Supp. at 1168; *Morton Grove Pharms.*, 525 F. Supp. 2d at 1045. Instead, we must consider the nature and quality of the testimony in light of the issues in the case. *Vandeveld*, 877 F. Supp. at 1168; *Morton Grove Pharms.*, 525 F. Supp. 2d at 1045.

WRMC indicates that it has four witnesses: (1) WRMC's CEO, William Bradley; (2) Tami Hutchinson, who formerly served as WRMC's Senior Vice President of

---

[1] WRMC argues that "the most pertinent sources of proof in this case . . . are located mostly in Arkansas." (Mem. at 6; Reply at 3.) However, those "pertinent sources of proof" are witnesses. (*Id.*) Therefore, to the extent that this statement is true, we consider it in the next factor, convenience to witnesses.

Planning and Business Development; (3) Tom Olstead, WRMC's counsel; and (4) Dan Yokels, WRMC's Chief Financial Officer. (Reply. at 4.) WRMC also argues that these witnesses are "the most pertinent sources of proof in this case." (Mem. at 6; Reply at 3.) However, WRMC recognizes that the crux of this case is the scope of the Authorization and that "the only material witnesses who can provide relevant evidence are the respective representatives of WRMC and Citadel." (Reply at 4.) Therefore, WRMC's witnesses are *not* the most pertinent; Citadel's witnesses are equally important. Citadel maintains that it has at least three witnesses that can apparently provide testimony relevant to the scope of the Authorization: David Earwig, Citadel's CEO, and Adam Lynch and James Smith, Citadel Vice Presidents. (Surreply at 1.) Because the testimonies of these witnesses are all relevant to the central issue in this case – the scope of the Authorization – and both parties plan to present an almost equal number of witnesses, this factor does not weigh heavily enough to offset Citadel's choice of forum.

Although the scope of the Authorization is the central issue in this case, it is possible that testimony may be needed from non-party witnesses regarding other issues. "[T]he convenience of party witnesses is less relevant than the convenience of non-party witnesses." *Morton Grove Pharms.*, 525 F. Supp. at 1045 (citing *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). Here, the relevant non-party witnesses are those that completed services requested by Citadel. (Resp. at 8.) Of those witnesses, at least six reside in Illinois. (*Id.*) Although WRMC correctly points out that the majority of the underlying amount of money at issue ($345,228.24 of $587,841.94) arises from the activities of non-party witnesses that reside outside of Illinois (Reply at 4), it has not indicated that it intends to call any non-party witnesses

located in the Western District of Arkansas,[2] which might weigh in favor of transfer. Moreover, as Citadel argues, AMB Development Corporation, located in Milwaukee, Wisconsin, represents $267,279.01 of the amount owed to non-Illinois entities, and is within the subpoena power of this court. (Surreply at 1-2.) Because WRMC has not indicated that it has non-party witnesses that will be inconvenienced by appearing in this district, Citadel has disclosed non-party witnesses located in this district, and the party witnesses for Citadel are equally material and would be equally inconvenienced if we transferred this case to the Western District of Arkansas as those for WRMC are from denial of the transfer, this factor does not support granting the transfer.

**4. Convenience of the Parties**

WRMC argues that it is an inconvenience to it to appear in this district because: "(1) attending trial will be more expensive and inconvenient for WRMC in Illinois than it would be for Citadel in Arkansas; . . . [(2)] WRMC is a regional hospital with offices only in the northwest corner of Arkansas; and [(3)] WRMC conducts 100% of its business in Arkansas." (Reply at 3.) However, as Citadel points out, "[i]t is obviously easier for Citadel to conduct this case in Chicago and for [WRMC] to conduct it in Arkansas." (Resp. at 9.) Although WRMC is inconvenienced by appearing here, Citadel

---

[2] WRMC discloses in its Reply that Hutchinson, whom they describe as a key witness, is no longer employed by WRMC, making her more like a non-party witness than a party witness. (Reply at 5.) It argues, therefore, that her inconvenience in traveling to Illinois and our lack of subpoena power over her weighs "heavily" in favor of transferring this case. (*Id.*) We disagree. Although Hutchinson may no longer be employed by WRMC, one witness is not enough to favor transfer to Arkansas. It may be inconvenient for her to travel her to testify, but it is not so inconvenient that we must transfer this case. We also note that even if Hutchinson becomes unwilling to testify, there are three other WRMC employees who can apparently testify as to the scope of the Authorization. (Reply at 4; Reply to Surreply at 2.) Therefore, in light of the additional witnesses regarding the same subject, the remote possibility that Hutchinson may not testify at any eventual trial is not sufficient to justify transfer.

-10-

would be inconvenienced by transfer to Arkansas. When the two parties each reside in the district they claim is more convenient, as is true in this case, this factor has been called a "draw." *Morton Grove Pharms.*, 525 F. Supp. 2d at 1045. Although WRMC may be correct that it is a smaller company and does business only in Arkansas, that does not indicate that WRMC does not have the resources to suffer the inconvenience of having to defend this suit in Chicago. *See Tensor Group, Inc. v. All Press Parts & Equip.*, 966 F. Supp. 727, 729 (N.D. Ill. 1997) (considering a disparity in resources in determining whether the transferee venue is more inconvenient to one party than the other). Because transfer to Arkansas would be inconvenient to Citadel, just as defending the suit in Chicago is inconvenient to WRMC, this factor does not weigh heavily towards transfer. Even if this factor favored transfer, it would not affect the outcome of this motion, as the only other factor with much weight is the plaintiff's choice of forum, which clearly points toward denying WRMC's transfer request.

**B. Interests of Justice**

Finally, § 1404(a) requires the court to weigh the interests of justice. *Coffey*, 796 F.2d at 220-21. This component "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Id.* In considering the interests of justice, we consider factors related to the efficient functioning of the courts. *Id.* at 221. For example, we may consider "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *First Nat'l Bank*, 447 F. Supp. 2d at 912.

WRMC concedes that given the absence of a choice of law clause in the Authorization, "it remains unclear whether Illinois or Arkansas law would apply to this

dispute." (Mem. at 8.) However, it argues that this is a "basic breach of contract claim that 'any federal judge can properly and easily adjudicate.'" (*Id.* (quoting *Preussag Int'l Steel Co. v. Ideal Steel & Builders' Supplies, Inc.*, No. 03 C 6643, 2004 WL 783102, at *7 (N.D. Ill. Jan. 21, 2004).) It is true, that regardless of whether Illinois or Arkansas law applies to this case,[3] any federal judge would likely be competent to adjudicate the case. However, this point does not help WRMC. It does not add to, nor subtract from, the weight of the factors in this analysis.

Furthermore, the speed of disposition does not weigh in favor – or against – transfer to the Western District of Arkansas. As WRMC indicates, in 2007, the median number of months from filing to disposition of a civil case was 6.3 months in this district, compared to 10.3 months in the Western District of Arkansas. (Mem. at 8. (citing *Federal Court Management Statistics 2007*, Administrative Office of the United States Courts, *available at* http://www.uscourts.gov/cgi-bin/cmsd2007.pl).) In contrast, in 2007, the median number of months from filing to trial, in the subset of cases that go to trial, was 29.7 months in this district and 13.0 months in the Western District of Arkansas. (*Id.*) Although this latter statistic on its face may suggest that transfer would increase the speed at which this case could go to trial, all things considered,[4] there is nothing to suggest that this case would move to conclusion significantly sooner in the Western District of Arkansas.

---

[3] The parties have not argued this issue. (*See* Mem. at 8.)

[4] The speed at which a case goes to trial is dependent upon a number of factors such as the complexity of the case, the practices of the parties during discovery, and the judge's schedule. As WRMC mentioned, this appears to be a basic breach of contract case and its complexity does not suggest that the length of time to trial, should it go to trial, would be unusually long.

While WRMC is inconvenienced by litigating the case in this district, Citadel would similarly be inconvenienced by litigating the case in the Western District of Arkansas. "Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for another party." *Vandeveld*, 877 F. Supp. at 1167. We conclude that WRMC has not met its burden "to demonstrate that the balance of the factor weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another." *Morton Grove Pharms.*, 525 F. Supp. 2d at 1044. We therefore deny WRMC's motion to transfer venue pursuant to § 1404(a).

**Conclusion**

For the reasons set forth above, we deny WRMC's motions to dismiss pursuant to Rule 12(b)(3) and 28 U.S.C. § 1391 and to transfer venue pursuant to 28 U.S.C. § 1404(a).

Honorable Marvin E. Aspen
United States District Judge

Date: December 29, 2008