UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITADEL GROUP LIMITED,  )
a Delaware corporation,  )
                        )
        Plaintiff,       )
                        )           No. 07-CV-1394
        v.              )
                        )           Judge Marvin E. Aspen
WASHINGTON REGIONAL MEDICAL  )
CENTER, an Arkansas non-profit corporation,  )
                        )
        Defendant.       )

# MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Plaintiff Citadel Group Limited ("Citadel") filed a four-count amended complaint against Defendant Washington Regional Medical Center ("WRMC") to recover costs it expended pursuant to its contractual agreement allegedly breached by WRMC, and lost profits based on WRMC's alleged breach of the agreement and of the duty to negotiate in good faith. (Am. Compl. ¶¶ 1-14; Citadel Resp. to Def. Mot. to Dismiss at 1 [hereinafter Citadel Resp.].) WRMC filed its answer, including its affirmative defenses and counterclaims alleging that Citadel breached their contract and the implied covenant of good faith and fair dealing and that WRMC is entitled to setoff certain amounts it has already paid to Citadel and other third parties. (Answer at 12.) The case is before us now on two pending motions: (1) a motion by Citadel to dismiss one of WRMC's counterclaims and to strike various affirmative defenses pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) (Citadel Mot. ¶ 1, 10-12); and (2) WRMC's motion to dismiss two counts of Citadel's amended complaint (WRMC Mem. in Support of its Mot.

to Dismiss at 1 [hereinafter WRMC's Mem.]). For the reasons set forth herein, we grant both motions in part.

## BACKGROUND

In May 2005, WRMC issued Request for Proposals ("RFP") for the development and lease of a medical office building in West Springdale, Arkansas. (Am. Compl. at 1.) Citadel responded to the RFP and submitted a proposal to WRMC on May 13, 2005, suggesting a transaction in which Citadel would acquire a ground lease estate from WRMC, finance and construct a new medical office building on the land, and then lease this building back to WRMC. (*Id.* at 2.) Citadel's proposal letter included a preliminary leasing terms sheet, which included terms for leasing the space back to WRMC. (*Id.*, Ex. B.) Although the original proposal expired on May 27, 2005, the two parties further communicated regarding the proposal. (*Id.*, Ex. B.) For example, in June 2005, WRMC requested lease and operating rate summaries, which Citadel provided. (*Id.*, Ex. C.) Finally, on August 24, 2005, at WRMC's request, Citadel re-sent its proposal letter, which was identical to the first proposal letter, but apparently without the attached preliminary leasing terms. (*Id.*, Ex. E.)

The proposal letter contained a one-paragraph clause entitled Authorization to Proceed ("Authorization"). On September 15, 2005, WRMC's CEO, William Bradley accepted and signed the proposal letter containing the Authorization. (*Id.*, Ex. F.) By agreeing to the Authorization, WRMC authorized Citadel "to proceed with Project development" under the terms specified by the agreement. (*Id.* at 2, Ex. F.) Pursuant to the Authorization, Citadel's fee for Project development was "four percent (4%) of project costs," to be paid according to two specifications. (*Id.*) WRMC was to pay

Citadel a "1% good faith deposit upon execution of [the] proposal," and the remaining balance was to be paid from "Project funding." (*Id.*) Accordingly, WRMC sent Citadel a $40,000[1] good faith deposit. (*Id.*)

Pursuant to the Authorization, Citadel prepared for the completion of the transaction by retaining attorneys, accountants, banks, and other professionals. (*Id.* at 3.) Citadel continued Project development until May 2006, when WRMC informed Citadel that it would not complete the transaction. (*Id.*) Citadel further alleges that after WRMC withdrew from its agreement with Citadel, WRMC retained AMB Development Group ("AMB") and USI-Arkansas ("USI"), two companies with whom Citadel had negotiated during Project development, and, using Citadel's plans and work product that AMB and USI prepared for Citadel, built and occupied the building that Citadel designed for WRMC. (*Id.* at 3-4.)

In its answer, WRMC alleges that Citadel's proposal anticipated a transaction in which Citadel "would execute a 'ground lease' for the land owned by Washington Regional Medical Foundation," build a medical office building on the leased ground, and then lease part of the building to WRMC pursuant to a "space lease." (Answer at 9.) Although WRMC recognizes that the two parties had an agreement pursuant to the Authorization, it alleges that the Authorization did not finalize an agreement regarding the potential ground or space leases of the medical office building. (*Id.* at 10.) Accordingly, WRMC alleges that Citadel acted outside the scope of the Authorization when it incurred "unreasonable and excessive financing and other fees and expenses," despite the fact that the two parties had not come to an agreement on a ground lease. (*Id.*

---

[1] WRMC states in its Answer and Counterclaim that it made a $60,000 good faith deposit to Citadel, rather than a $40,000 deposit. (Answer at 3, 13.)

at 11.) WRMC asserts that Citadel breached their agreement and the covenant of good faith and fair dealing by incurring "unreasonable and exorbitant fees" before the parties executed a ground lease and by "failing to reduce WRMC's overall costs and expenses" as Citadel promised in its proposal letter, representations, and the Authorization. (*Id.* at 12.) Although WRMC admits that it "was not to have direct relationships with any of the other entities Citadel chose to hire" (*id.* at 11), it contracted with AMB and USI for the completion of the building after WRMC ended its transaction with Citadel. (Am. Compl. at 3; *See* Answer at 13.) Pursuant to WRMC's agreement with AMB and USI, it made payments to those companies. (Answer at 13.) Therefore, WRMC also alleged a claim of setoff, arguing that various costs it incurred – including its payments to AMB and USI – should be deducted from any amount it may owe Citadel. (*Id.* at 13-14.)

## STANDARD OF REVIEW

The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, a court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (2007); *Killingsworth*, 507 F.3d at 618-19. These requirements ensure that the defendant

receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

Furthermore, Rule 8© requires parties to set forth any affirmative defenses in their responsive pleadings and specifically lists nineteen defenses that must be pled "affirmatively." Fed. R. Civ. P. 8©. A motion to strike pursuant to Rule 12(f) is the appropriate means of removing "impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense." *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991); Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are generally disfavored because of their potential to delay proceedings. *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975) (citations omitted); *Carpenter v. Ford Motor Co.*, 761 F. Supp. 62, 65 (N.D. Ill. 1991). Such a motion should therefore not be granted unless the defense is "patently defective" on the face of the pleadings. *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982). Defenses generally "will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991). Nonetheless, a motion to strike can be a useful means of removing "unnecessary clutter" from a case. *Heller Fin., Inc.*, 883 F.2d at 1294.

A three-step analysis is required when assessing the sufficiency of an affirmative defense. *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 905 (N.D. Ill. 2006); *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802-03 (N.D. Ill. 2000); *Van Schouwen*, 782 F. Supp. at 1245. First, we determine whether the matter is appropriately pled as an affirmative defense. "Only matters that deserve a clear 'no' answer will be stricken to make the pleadings more concise." *Bobbitt*, 532 F. Supp. at 737. Second, we consider whether the defense has been adequately pled pursuant to the requirements of Federal Rules of Civil Procedure 8 and 9. *Id.*; *Reis Robotics*, 462 F. Supp. 2d at 905. Finally, we evaluate the sufficiency of the defense pursuant to the standard followed in assessing Rule 12(b)(6) motions. *Reis Robotics*, 462 F. Supp. 2d at 905; *Bobbitt*, 532 F. Supp. at 737. Ultimately, a defense should be stricken only if the defendant cannot prove any set of facts in support of the defense that would defeat the complaint. *Reis Robotics*, 462 F. Supp. 2d at 905; *Bobbitt*, 532 F. Supp. at 737.

## ANALYSIS

**I. Citadel's Motion**

Citadel moves to dismiss Count II of WRMC's counterclaim and to strike WRMC's second, fifth, ninth, and tenth affirmative defenses. Each request will be discussed below.

**A. WRMC's Request for Setoff**

WRMC requests that the following costs be setoff from any amount it owes to Citadel: the amount WRMC paid to AMB and USI; WRMC's deposit paid to Citadel; any costs, fees, or expenses that Citadel incurred prior to the date WRMC executed the Authorization; any amounts that Citadel claims which are excessive and unreasonable;

and any damages amount that Citadel owes to WRMC as a result of Citadel's alleged breach of the covenant of good faith and fair dealing. (Answer at 13-14.) WRMC asserts its claim for setoff as both a counterclaim and an affirmative defense. (Answer at 7, 13.)

As a preliminary matter, a claim for setoff is not properly pled as an affirmative defense, "because setoff does not destroy the plaintiff's right of action." *CIPA Mfg. Corp. v. Allied Golf Corp.*, No. 94 C 6574, 1995 WL 337022, *2 (N.D. Ill. June 1, 1995). Accordingly, we strike WRMC's tenth affirmative defense for setoff. A claim for setoff is essentially a "'counterdemand based on some transaction entirely extrinsic to the plaintiff's cause of action.'" *CIPA Mfg. Corp.*, 1995 WL 337022, at *2 (quoting *In re Johnson*, 552 F.2d 1072, 1078 (4th Cir. 1977); *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1440 (7th Cir. 1993) (describing setoff as the ancestor of the permissive counterclaim). Accordingly, a claim for setoff can only survive if it is a claim that is enforceable as an independent cause of action. *Coplay*, 983 F.2d at 1440 ("[A] setoff . . . is just a subset of the permissive counterclaim."); *CIPA Mfg. Corp.*, 1995 WL 337022, at *2; *Hentze v. Unverfehrt*, 237 Ill. App. 3d 606, 612, 604 N.E. 536, 540-41 (5th Dist. 1992) ("Setoff refers to the situation when a defendant has a distinct cause of action against the same plaintiff who has filed suit against him."). Because WRMC has alleged setoff for five different types of damages, we must consider whether each of those is properly classified as a setoff. Four of WRMC's setoff requests could be enforceable by its own cause of action - the deposit WRMC paid to Citadel,[2] costs that

---

[2] Citadel argues that WRMC is not entitled to a setoff for the deposit as a matter of law because "courts considering the legal meaning of a 'deposit' in the context of a business transaction such as the one which is the subject of this lawsuit look to the common and ordinary meaning of the word." (Citadel Mot. ¶ 8.) The one case Citadel cites is not persuasive. In *In re Salazar*, the Ninth Circuit interpreted whether a full payment made in advance was a deposit within the meaning of the consumer deposit

Citadel incurred prior to WRMC's execution of the Authorizations, amounts claimed by Citadel that are unreasonable, and any damages Citadel owes WRMC as a results of Citadel's alleged breach. These types of damages could be available to WRMC if it satisfies its breach of contract claim. For example, WRMC alleges that Citadel breach the contract by incurring exorbitant costs. (Answer at 12.) At this stage in the litigation, it is too early to state, as a matter of law, that WRMC would not be entitled to damages based on this breach, including a setoff of any unreasonable costs incurred by Citadel. Because these setoff requests are based on WRMC's counterdemand, we deny Citadel's request to dismiss the setoff counterclaim.

WRMC's request for setoff as to its payments to AMB and USI, however, are different. Citadel argues that WRMC would only be entitled to a setoff for these payments if it had an independent obligation to pay AMB and USI arising from contract, rather than voluntary payment. (Citadel Mot. at 5.) To support its argument that setoff is not available for voluntary payments, Citadel cites various bankruptcy cases and two cases applying inapplicable state law. (*See* Citadel Mot. ¶¶ 5-6 (citing *Stoebner v. Horizon Fabricators, Inc.*, 153 B.R. 840, 852 (4th Cir. 1993); *In re Scherer Hardware &*

---

priority provision of the Bankruptcy Code. 430 F.3d 992. 995 (9th Cir. 2005) (citing 11 U.S.C. § 507(a)(6)). The court looked to the definition of deposit provided by various dictionaries to determine the plain meaning of the word deposit. *Id.* However, the court was looking to determine whether a deposit must be a portion of the whole price, or whether it can include a full payment. Although, as Citadel points out, Black's Law Dictionary does state that deposit means "[m]oney placed with a person as earnest money or security for the performance of a contract," and that "[t]he money will be forfeited if the depositor fails to perform," that is only one definition of deposit. Because the word deposit does not clearly and always mean a non-refundable deposit, we cannot conclude at this stage in the litigation that the deposit may not be setoff against any damages that WRMC may owe. This is particularly true given that the Authorization allowed for a "good faith deposit" (Am. Compl., Ex. F), and WRMC alleges that Citadel breached the agreement by incurring exorbitant fees (Answer at 12).

*Supply, Inc.*, 9 B.R. 125, 131-32 (N.D. Ill. 1981); *United States v. Speir*, 808 F. Supp. 829, 833 (S.D. Ga. 1992) (citing Georgia's equitable setoff statute, which does not allow setoff when one makes a voluntary payment); *Maziarski v. Bair*, 83 Wash. App. 835, 841-42, 924 P.2d 409, 413-14 (Wash. App. 1996) (discussing setoff in terms of payments made by a collateral source in a personal injury suit)).) We find these cases irrelevant and their use misleading. Although we recognize that federal bankruptcy law does not create a right to setoff, *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289 (1995), bankruptcy courts are hesitant to allow setoff for voluntary payments because such payments may interfere with priority of debt in bankruptcy. *In re Scherer*, 9 B.R. at 129. Because we are not concerned here with issues of priority in bankruptcy, the voluntary nature of a payment is irrelevant. Moreover, WRMC alleges that the payment was not voluntary, but was compelled by its independent contractual obligations to AMB and USI. (Answer at 13; WRMC Opp. at 4-5.) WRMC's statement in its Answer that it "was not to have direct relationships with any of the other entities Citadel chose to hire" (Answer at 11), does not, as Citadel contends (Mot. at 2), constitute an affirmative allegation that WRMC did not in fact have direct relationships with those entities. Although WRMC never affirmatively states in its Counterclaim that it entered into contractual relationships with AMB or USI, at the motion to dismiss stage of litigation, we may reasonably infer such relationships from the fact that WRMC made payments to AMB and USI and from Citadel's allegations that WRMC retained AMB and USI to complete the medical office building. (*Id.* ¶¶ 30-31; Am. Compl. at 6.)

Even though we disagree with Citadel's argument that WRMC cannot setoff its payments to AMB and USI because they were voluntary payments, we agree that

WRMC's claim of setoff for the payments made to AMB and USI must be dismissed. WRMC's request based on these payments presents no independent legal cause of action to justify the amount it seeks. *See Coplay*, 983 F.2d at 1440. WRMC would not have a claim against Citadel to recover the amount it paid to AMB or USI because, under the Authorization, WRMC was responsible for paying these companies, given that WRMC did not execute the space leases and ground lease. (*See* Am. Compl. at 2, Ex. F.) However, we agree with WRMC that it should not be forced to pay Citadel for costs that Citadel has not actually incurred. Citadel's amended complaint is unclear as to whether Citadel has paid AMB or USI the invoice amounts it requests from WRMC. If Citadel has not yet paid AMB or USI, and WRMC can prove that Citadel does not owe money to AMB or USI because WRMC's own payments to those companies satisfied any debt Citadel owed, Citadel will not be able to support its claim for damages in the amount requested. Accordingly, WRMC would not be obligated to pay that amount to Citadel. WRMC's request for setoff for the payments to AMB and USI is properly framed as a damages issue, rather than as a counterclaim. Accordingly, WRMC's claim for setoff based on its payments to AMB and USI is dismissed.

**B. Affirmative Defenses**

Citadel also moves to strike WRMC's second, fifth, and ninth affirmative defenses.[3] WRMC voluntarily withdrew its second affirmative defense, which asserted that Citadel's claim was barred due to a lack of personal jurisdiction. (WRMC Opp. at 2,

---

[3] WRMC also asserted an affirmative defense for failure to state a claim. (Answer at 7.) Although Citadel does not move to strike this defense, we do so *sua sponte*. The proper means for establishing a failure to state a claim is via a Rule 12(b)(6) motion to dismiss, rather than an affirmative defense. *Home Depot U.S.A., Inc. v. UBM, Inc.*, No. 06 C 3821, 2007 WL 611279, at *2 (N.D. Ill. Feb. 22, 2007); *In re Olympia Brewing Co. Secs. Litig.*, No. 77 C 1206, 1985 WL 3928, at *2 (N.D. Ill. Nov. 13, 1985).

n.1). Accordingly Citadel's motion to strike WRMC's second affirmative defense is denied as moot.

Citadel argues that WRMC's fifth affirmative defense asserting that Citadel's claim is barred by the doctrine of unclean hands should be stricken because this defense is only available for claims of equity, rather than claims for money damages at law. (Citadel Mot. at 5.) We agree. Under Illinois law, "the clean hands doctrine operates to bar equitable remedies and does not affect legal rights." *Am. Nat'l Bank & Trust Co. of Chi. v. Levy*, 83 Ill. App. 3d 933, 936, 404 N.E.2d 946, 948 (1st Dist. 1980) (expressly rejecting plaintiff's argument that the doctrine applies to both equity and law actions); *see also Zahl v. Krupp*, 365 Ill. App. 3d 850, 873, 850 N.E.2d 304, 310 (2d Dist. 2006) ("[T]he unclean hands doctrine bars only equitable remedies and does not affect legal rights."). WRMC contends, on the other hand, that the unclean hands doctrine is an affirmative defense to a breach of contract claim "where the defendant alleged the plaintiff 'acted in a way that amounts to fraud, misconduct or bad faith.'" (WRMC Opp. at 13 (citing *Home Depot*, 2007 WL 611279, at *2. *Home Depot*, however, does not expressly state that the claim can apply where the plaintiff seeks only damages at law. It explains that the defense is an "equitable defense" and allows the defense against a breach of contract claim, but does not further explore whether it can be applied to actions at law. *Home Depot*, 2007 WL 611279, at *2. Even assuming that the underlying action in *Home Depot* was only for damages at law, it does not persuade us to reject the Illinois Appellate Court cases, which clearly prohibit the application of the unclean hands doctrine to such cases seeking only damages at law. *See, e.g.*, *Am. Nat'l Bank & Trust Co. of Chi.*, 404 N.E.2d at 948, 83 Ill. App. 3d at 936; *Zahl v. Krupp*, 850 N.E.2d at 310,

365 Ill. App. 3d at 873. Because Citadel's claim is for a breach of contract, seeking damages at law and not equity, WRMC's affirmative defense of unclean hands is stricken.

WRMC also alleged an affirmative defense of "bad faith," based on Citadel's failure "to exercise good faith and fair dealings in its dealings with [WRMC]." (Answer at 6.) Citadel argues that we should strike this defense because there is no independent cause of action for a breach of the covenant of good faith and fair dealing. (Citadel Mot. at 5.) Under Illinois law, "every contract contains an implied covenant of good faith and fair dealing." *Suburban Ins. Servs., Inc. v. Va. Surety Co.*, 322 Ill. App. 3d 688, 693, 752 N.E.2d 15, 19 (1st Dist. 2001). Unless expressly disavowed in the contract, this duty requires the parties to act in good faith when exercising any discretion afforded to them by their contractual relationship. *N. Trust Co. v. VIII S. Mich. Assocs.*, 276 Ill. App. 3d 355, 367, 657 N.E.2d 1095, 1104 (1st Dist. 1995); *Suburban Ins. Servs.*, 322 Ill. App. 3d at 693, 752 N.E.2d at 19; *United Air Lines, Inc. v. ALG, Inc.*, 912 F. Supp. 353, 358 (N.D. Ill. 1995). Accordingly, when a contract gives a party discretion in its performance, "such discretion must be exercised 'reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.'" *Finola Capital Corp. v. Slyman*, No. 01 C 6244, 2002 WL 318294, *7 (N.D. Ill. Feb. 25, 2002) (quoting *N. Trust Co.*, 276 Ill. App. 3d at 367, 657 N.E.2d at 1104). The covenant of good faith is a rule of contract construction, and does not create an "independent source of tort liability." *Voles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 297, 751 N.E.2d 1126, 1131 (Ill. 2001); *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 526-27, 675 N.E.2d 897, 904 (Ill. 1996). However, a breach of the covenant of good faith can be

subsumed in a breach of contract claim. *See Indus. Specialty Chems., Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 811 (N.D. Ill. 1995); *Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Trust*, 846 F. Supp. 701, 713-14 (N.D. Ill. 1994).

Although breach of the covenant of good faith and fair dealing is not an independent cause of action apart from breach of contract, it can be an affirmative defense if the party asserting the defense alleges facts to support the defense. *See Finola Capital Corp. v. Slyman*, No. 01 C 6244, 2002 WL 318294, *7 (N.D. Ill. Feb. 25, 2002) (striking a defense of the implied covenant of good faith and fair dealing not because such an affirmative defense does not exist as a matter of law, but because the defendants did not allege facts establishing a breach); *N. Trust Co.*, 276 Ill. App. 3d at 368, 657 N.E.2d at 1104 (same); *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 112-13, 618 N.E.2d 418, 424 (1st Dist. 1993) (same); *Anderson v. Burton Assocs., Ltd.*, 218 Ill. App. 3d 261, 267, 578 N.E.2d 199, 203 (1st Dist. 1991) (same). WRMC has alleged that Citadel improperly exercised its discretion granted by the Authorization by incurring unreasonable and excessive expenses. (*See* Answer at 11.) Therefore, we deny Citadel's motion to strike WRMC's defense invoking the covenant of good faith and fair dealing.

## II. WRMC's Motion

WRMC moves to dismiss Counts II and III of Citadel's amended complaint and to strike Count IV. Citadel admitted that Count IV was inadvertently included in its amended complaint and recognizes that it did not request leave to file Count IV. (Citadel Resp. at 2.) Accordingly, they withdraw Count IV from their complaint.

**A. Count II**

In its motion to dismiss, WRMC argues that Count II is duplicative of Count I and that it fails to state a claim entitling Citadel to the damages it seeks. We reject WRMC's argument that Count II is duplicative of Count I because Count II can reasonably be inferred as alleging a separate breach of the agreement.

Federal Rule of Civil Procedure 10(b) directs that "[e]ach claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . whenever a separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b). Although the two counts arise from the same agreement, they are not necessarily part of the same transaction or occurrence such that alleging then in separate counts is duplicative. As Citadel argues in its response, Count I is a claim of breach arising from WRMC's failure to pay certain costs that the Authorization specifically required it to pay in the event that the Project is not developed. (Citadel Resp. at 3; Am. Compl., Ex. F.) Count II, on the other hand, alleges a separate breach of the agreement arising from WRMC's completion of the Project without Citadel. (Am. Compl. at 4 ("[WRMC's] actions in using Citadel's AMB and USI plans and the work product which they had prepared for Citadel to build the medical office building developed by Citadel are a breach of its agreement with Citadel.").) The fact that the two alleged breaches arise from the same agreement does not make the Counts duplicative. *See, e.g.*, *FE Digital Invs. Ltd. v. Hale*, 499 F. Supp. 2d 1054, 1061-62 (N.D. Ill. 2007) (involving separate counts for breach of contract arising from the same agreement, but denying summary judgment to one of those counts as moot because the recovery sought was identical to the recovery received under separate count); *Biomet, Inc. v. Smith*, 238 F. Supp. 2d 1036, 1045 (N.D. Ind. 2002) (addressing separate counts for breach of contract arising from the

same agreement, but precipitated by different actions). Accordingly, we reject WRMC's contention that Count II is duplicative of Count I.

WRMC also argues that Count II should be dismissed for failure to state a claim because the Authorization prevents Citadel from seeking lost profits. (WRMC Mem. at 6.) Citadel alleges that WRMC breached their agreement when it entered into an agreement with AMB and USI to use the work product prepared for Citadel to complete the Project. (Am. Compl. at 4.) Accordingly, Citadel alleges that it is entitled to its benefit of the bargain, or lost profits, that it would have enjoyed had it completed the Project and leased the building back to WRMC. (*Id.*) WRMC argues, however, that Citadel cannot recover lost profits because the Authorization did not contemplate such profits, demonstrated by language in the Authorization setting forth WRMC's obligation if the Project was not completed, or if the leases were not executed. Instead, WRMC contends, the Authorization only contemplated further lease negotiations and did not impose a contractual obligation on WRMC to enter into lease agreements with Citadel.

We address first WRMC's contention that it did not breach the Authorization by proceeding with the Project with AMB and USI because the Authorization at most only required it to enter into lease negotiations with Citadel. (WRMC Mem. at 6.) Drawing all reasonable inferences in favor of Citadel, as we must in deciding WRMC's motion to dismiss, *Thompson*, 300 F.3d at 753, we cannot say as a matter of law that WRMC's relationship with AMB and USI did not breach the Authorization. The Authorization clearly contemplated a scenario in which the Project would not be completed. (Am. Compl., Ex. F (explaining that WRMC would be responsible for all legal expenses and other costs "whether or not the Project is ultimately developed," and acknowledging that

-15-

WRMC would only pay architectural and engineering fees if WRMC did not enter lease agreements).) However, a reasonable inference based on Citadel's allegations, including the text of the Authorization and other documents it attached to its amended complaint, is that the Authorization restricted WRMC from proceeding with the Project without Citadel. This inference does not contradict the Authorization because such an interpretation would not prohibit WRMC from withdrawing from the Project; it would simply prohibit WRMC from withdrawing for the purpose of proceeding without Citadel. Given the standard on a motion to dismiss, we cannot conclude that such an interpretation is unreasonable.

Moreover, we cannot conclude that the Authorization sets forth exclusive remedies in the case that WRMC breaches the contract by proceeding with the Project without WRMC, as alleged by Citadel. Under Illinois law, "parties by an express agreement may contract for an exclusive remedy that limits their rights, duties, and obligations." *Bd. of Regents v. Wilson*, 27 Ill. App. 3d 26, 32, 326 N.E.2d 216, 220 (2d Dist. 1975). Although the word "exclusive" need not be used, it "must clearly indicate that the intent of the parties was to make the stipulated remedy exclusive." *Id.*; *Hicks v. Airborne Express, Inc.*, 367 Ill. App. 3d 1005, 1011, 858 N.E.2d 48, 54 (5th Dist. 2006) ("Illinois courts have recognized and enforced exclusive remedy provisions, even when the contract omits the word 'exclusive,' when the contract as a whole warrants that construction."); *Guitar Ctr. Stores, Inc. v. 7250 S. Cicero Equities, LLC.*, No. 07 C 4227, 2007 WL 3374592, at *4 (N.D. Ill. Nov. 8, 2007) ("While the magic word 'exclusive' need not be used, the contract as a whole must clearly indicate that a remedy is

exclusive.") (citations omitted).  The Authorization does not clearly indicate that the remedies provided are exclusive.

Although WRMC argues that this case is analogous to *Industrial Representatives, Inc. v. CP Clare Corp*, No. 94 C 6601, 1995 WL 348049 (N.D. Ill. June 6, 1995), a case enforcing an exclusive remedies clause, we disagree.  In *CP Clare*, the contract expressly contemplated what would occur if one of the parties breached.  *Id.* at *1.  The agreement in *CP Clare* specifically stated that "'[b]reach of any covenant herein shall automatically terminate this Agreement, effective thirty (30) days there from,'" and explained how commissions would be paid "when the Agreement is terminated by either party *or by breach*."  *Id.* (emphasis added).  The Authorization in this case obligates WRMC to pay for "all legal expenses and other costs associated with Project development, except architectural and engineering fees, whether or not the Project is ultimately developed." (Am. Compl., Ex. F.)  That phrase sets forth WRMC's obligation regarding the legal expenses and other costs, not its obligations to Citadel in the event of a breach. Moreover, the Authorization's requirement that WRMC pay the architectural and engineering fees if WRMC does not execute the leases does not necessarily cover WRMC's obligations in the event of a breach.  There is nothing in the Authorization to indicate that WRMC's obligations to pay certain expenses were Citadel's exclusive remedies.  Thus, at this stage in the litigation, we cannot conclude that Citadel is not entitled to lost profits.  Accordingly, WRMC's motion to dismiss Count II is denied.

**B. Count III**

In Count III, Citadel alleges that WRMC breached the covenant of good faith and fair dealing by not negotiating the ultimate leases for the Project in good faith.  (Am.

Compl. at 5.) WRMC moves to dismiss Count III, because the covenant of good faith and fair dealing is not an independent cause of action under Illinois law. (WRMC Mem. at 8.) Citadel responds that because the failure to negotiate in good faith is an independent cause of action, WRMC's motion must be denied. (Citadel Resp. at 14.) For the reasons discussed below, we grant WRMC's motion with respect to Count III.

Illinois law recognizes an independent cause of action for a breach of the duty to negotiate in good faith. *See, e.g.*, *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chem. Group, Inc.*, 873 F.2d 155, 158 (7th Cir. 1989); *Milex Prods., Inc. v. Alra Labs., Inc.*, 237 Ill. App.3d 177, 189, 603 N.E.2d 1226, 1234-35 (2d Dist. 1992). The Seventh Circuit has described the duty to negotiate in good faith as "preventing one party from renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to the preliminary agreement." *A/S Apothekernes*, 873 F.2d at 158 (citations omitted). A duty to negotiate in good faith only exists where the agreement between the parties creates the duty. *Id.* ("The full extent of a party's duty to negotiate in good faith can only be determined . . . from the terms of the letter of intent itself."); *see also Milex Prods., Inc.*, 237 Ill. App.3d at 189, 603 N.E.2d at 1234. Citadel has not pointed to any portion of the Authorization that limits the parties' behavior in negotiating the ground and space leases. Without language creating such a duty to negotiate in good faith, we cannot infer such a duty. *See Lyons III v. SBCI Swiss Bank Corp. Inv. Banking, Inc.*, No. 94 C 5448, 1995 WL 151810, at *2 (N.D. Ill. Mar. 31, 1995) ("[U]nlike the duty of good faith imposed by courts with respect to contract performance, there is no inherent duty of good faith with respect to contract formation.").

Citadel suggests that its claim can withstand a motion to dismiss because the duty to negotiate in good faith arises from the covenant of good faith and fair dealing. (Citadel Resp. at 14 (describing WRMC's failure to negotiate in good faith as a breach of the covenant of good faith and fair dealing).) This argument fails for two reasons. First, the duty to negotiate in good faith is not an extension of the covenant of good faith and fair dealing. *A.T.N., Inc. v. McAirlaid's Vliesstoffe GMBH & Co.*, No. 05 C 7286, 2008 WL 696916, at*7 (N.D. Ill. Mar. 11, 2008) (rejecting the argument that the covenant of good faith and fair dealing creates a basis for granting plaintiff the benefits of an unsuccessfully negotiated contract and, instead, looking to whether the letter of intent created a separate duty to negotiate); *Lyons III*, 1995 WL 151810, at *2 (differentiating between the duty to negotiate in good faith and the covenant of good faith and fair dealing). Therefore, although the parties had a contractual relationship, Citadel cannot establish WRMC's duty to negotiate in good faith, which does create an independent cause of action, by citing the covenant of good faith and fair dealing.

The second reason Citadel's argument fails is that the covenant of good faith and fair dealing does not create an independent cause of action. *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (referring to the Illinois Supreme Court's decision rejecting an independent cause of action for the covenant); *Voyles*, 196 Ill.2d at 296, 751 N.E.2d at 1131 (refusing to recognize an independent cause of action for the implied covenant of good faith and fair dealing). Therefore, to the extent that WRMC's actions in negotiating the leases breached the covenant of good faith and fair dealing, the appropriate remedy is a breach of contract, not an independent cause of action in tort. Accordingly, WRMC's motion to dismiss Count III is granted.

## CONCLUSION

For the reasons set forth above, we grant the portion of Citadel's motion to dismiss (58) WRMC's second counterclaim seeking an offset for payments to AMB and USI. We grant Citadel's motion to strike (58) as to WRMC's fifth and tenth defense, but deny the motion as to WRMC's ninth affirmative defense. We deny Citadel's motion (58) to strike WRMC's second affirmative defense as moot, because WRMC has voluntarily withdrawn that defense. We strike WRMC's first affirmative defense. We grant WRMC's motion to dismiss (68) Count III of Citadel's amended complaint and deny its motion as to Count II. Finally, because Citadel has withdrawn Count IV, we deny WRMC's motion to dismiss that count as moot.

_____
Honorable Marvin E. Aspen
United States District Judge

Date: May 13, 2009